```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

GREGORY GRAVES,

        Petitioner,               **DECISION AND ORDER**
                                   Nos. 05-CV-6360T, 01-CR-6051T

   -vs-

UNITED STATES OF AMERICA,

        Respondent.

_____

## INTRODUCTION

    Petitioner, Gregory Graves ("Graves"), filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 challenging his conviction pursuant to a guilty plea. As grounds for habeas relief, Graves asserted that he did not receive the effective assistance of counsel during his plea bargain, at sentencing, and on appeal due to, *inter alia*, counsel's failure to request "specific performance" of the Government's alleged promise to make a downward departure motion in return for Graves' cooperation.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    By Indictment No. 01-CR-6051 filed on September 21, 2000, a federal grand jury charged Graves with violations of 28 U.S.C. § 841(a) (possession of crack cocaine with intent to distribute) and 28 U.S.C. § 844 (felony possession of crack cocaine). On May 14, 2001, Graves entered into a plea agreement with the Government, pursuant to which he agreed to waive indictment and plead guilty to a felony information charging him with one

violation of 28 U.S.C. § 924(c)(1) (possession of a firearm in furtherance of a drug-trafficking crime). In exchange for his guilty plea, Graves was guaranteed a sentence of fifteen years in accordance with former Rule 11(e)(1)(c) (now Rule 11(c)(1)(c)) of the Federal Rules of Criminal Procedure. The plea agreement also contained a cooperation provision which would be accomplished by the "[d]efendant's providing complete and truthful information regarding his knowledge of criminal activity and by testifying to the extent deemed necessary by the Government." *Graves*, 374 F.3d at 81. However, the cooperation section of the plea agreement did not require the defendant to provide or obtain information about criminal activity by acting as an informant nor did it provide that the Government would move, or consider moving for a 5K1.1 departure for rendering substantial assistance. Furthermore, Graves agreed that he would not appeal or collaterally attack the agreed upon fifteen-year sentence.

On September 13, 2001, the Government advised the Court that it was declining to move for the § 5K1.1 downward departure. Graves moved to withdraw the plea on November 27, 2001, and, after oral argument on December 10, 2001, the Court denied Graves's application. On December 14, 2001, Graves was sentenced to a term of imprisonment of fifteen years. Graves filed a notice of appeal on December 21, 2001, and on November 1, 2002, the Government's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there were no meritorious issues which could be raised on appeal.

2

The Court of Appeals for the Second Circuit filed an order on August 21, 2003, directing appellate counsel to file a revised brief addressing several additional issues: (1) whether the Government breached its cooperation agreement by failing to move for a downward departure because the information provided by Graves was not of an "historical nature"; (2) whether trial counsel was ineffective; (3) whether ineffective assistance of counsel was a basis for Graves to withdraw his plea; and (4) whether ineffective assistance of counsel claims are properly brought on direct appeal in the first instance when the defendant has different trial and appellate counsel; and (5) whether an *Anders* motion which fails to raise an ineffective assistance claim may be granted on the ground that the appellant may raise ineffective assistance in a 28 U.S.C. § 2255 petition in the first instance, without being procedurally barred. *See* Respondent's Memorandum of Law at 4 (Docket #29, No. 01-CR-6051T).

Graves then filed an appellate brief on October 23, 2003, in which he sought to compel the Government to move for a downward departure, arguing, *inter alia*, that the Government had breached the cooperation portion of the plea agreement. *See* Exhibit 5 to Respondent's Motion to Dismiss the Petition (Docket #29). The Government responded on December 20, 2003, and contended that it had not acted in bad faith in declining to make the downward departure motion. The Second Circuit issued a mandate on July 6, 2004, remanding the case to this Court for "factual inquiry as to what exactly was said about 'proactive cooperation,' what

understanding was reasonably conveyed to the Defendant concerning the cooperation that would be required for him to have a chance for a reduced sentence and whether he would be released in order to render such cooperation, and whether the Government intended to oppose such release." *United States v. Graves*, 374 F.3d 80, 85 (2d Cir. 2004).

Pursuant to the Second Circuit's mandate, this Court held a hearing on September 9, 2004. At the opening of the hearing and before any factual inquiries were made, Graves, through appellate counsel, requested that he be permitted to withdraw his motion to withdraw the plea and to continue serving the original fifteen-year sentence.[1] The Court confirmed on the record that Graves was satisfied with appellate counsel's representation and that it was his informed decision not to proceed with the earlier motion to withdraw the plea. *See* Transcript of September 9, 2004 Hearing at 3-5.

Graves filed the instant *pro se* petition for habeas relief on July 11, 2005, in which he raises the following claims for relief: (1) plea counsel was ineffective in "fail[ing] to get the 5K1.1 aspect of the agreement in writing and fail[ing] to discuss the terms at defendant[']s plea elocution"; (2) appellate counsel was ineffective in failing to request "specific performance of the

---

[1] Assistant Federal Public Defender Mark Hosken ("Hosken") explained, "[I]t's now [Graves's] decision that he does not wish to go further with the original motion to withdraw his plea and he is prepared to withdraw the motion to withdraw his plea and continue with the sentence that you imposed originally. . . ." Transcript of September 9, 2004 Hearing at 3.

4

government[']s breach and not withdrawal of defendant[']s plea"; (3) sentencing counsel was ineffective in failing to "raise an *Apprendi* violation due to unconstitutional sentencing enhancements" and failing to raise objections to the pre-sentence report; and (4) appellate counsel was ineffective in failing to raise a "*Booker*, *Fanfan* nor [*sic*] *Blakely*[2] violation due to unconstitutional sentence enhancements" and failing to raise objections to the pre-sentence report. *See* Petition at 5-6 (Docket #26, No. 01-CR-6051T).

Graves subsequently sought the appointment of counsel on August 1, 2005. The Court granted Graves's request on April 5, 2006, appointing attorney James Vacca, Esq. ("Vacca") to represent Graves. Vacca submitted a Response to Government's Motion to Dismiss Pursuant to 28 U.S.C. § 2255 ("Petitioner's Response") on Graves's behalf on July 7, 2006. Also attached to Petitioner's Response was Graves's *pro se* Reply to the Government's Response to the Motion to Vacate ("Petitioner's Reply"), dated May 9, 2006. The argument section of Petitioner's Response contains two main point headings: (1) trial counsel should have moved for specific performance of the cooperation/5K1.1 aspect of the plea agreement; and (2) trial counsel was ineffective in failing to move the District Court to bind the Government to its "5K1.1 promise," or, in the alternative, "to hold a bad-faith hearing on the same." In both of the argument sections, Vacca essentially makes the same

---

[2]   United States v. Booker, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Fanfan*, 542 U.S. 956 (2004).

argument, elaborating on Graves's assertion that he did not receive the effective assistance of counsel due to counsel's failure to request specific performance of the Government's alleged breach of the "5K1.1 agreement" instead of moving for withdrawal of petitioner's plea.

According to Vacca, Graves did not and does not want to withdraw his plea–rather, he "just [wanted to] hold the Government to its promise." Indeed, at the remand hearing, attorney Hosken only stated that Graves had decided to withdraw his motion to vacate the plea and continue serving his fifteen-year sentence. Vacca asserts that Hosken should have argued that Graves "was not contending that he had been assured that he would receive less than 15 years, but that he had been assured an *opportunity* to provide the Government with cooperation and substantial assistance that would warrant a 5K1.1 motion, which would give Mr. Graves a chance for a reduced sentence." Petitioner's Response at 8 (emphasis in original) (citing *Graves*, 374 F.3d at 84).

Both Vacca and Graves are requesting that the Court now hold the bad faith hearing originally ordered by the Second Circuit in 2004. In the event that the Government is found to have acted in bad faith, due to its alleged breach of its obligations under the so-called "cooperation clause" by failing to secure Graves's release from custody so that he could provide "proactive" cooperation to the Government, Vacca and Graves request specific performance of the so-called "cooperation 5K1.1 aspect of the plea agreement."

6

For the reasons set forth below, petitioner's request for a hearing is denied and his petition for a writ of habeas corpus is dismissed.

## DISCUSSION

**1. Validity of petitioner's waiver of appellate rights and collateral-attack rights and its effect as a procedural bar**

The Government asserts that Graves's claims are an improper attempt to circumvent the waiver of appellate and collateral-attack rights contained in his sentencing agreement. It is well-settled law in this Circuit that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable. *United States v. Djelevic*, 161 F.3d 104, 106-07 (2d Cir. 1998) (citing, *inter alia*, *United States v. Chen*, 127 F.3d 286, 289-90 (2d Cir. 1997) (noting that "[t]he right to appeal may be waived as part of a plea agreement," but declining to enforce a waiver that was not knowing and voluntary); *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (*per curiam*) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.")). *See also Frederick v. Lewisburg Corr. Fac.*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement.") (citing *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (*per curiam*)), *cert. denied*, 537 U.S. 1146 (2003).

In the plea elocution, Graves stated that he was voluntarily waiving his right to appeal his sentence.[3] The written plea agreement, which Graves acknowledged in court that he had signed, provided as follows: "The defendant . . . knowingly waives the right to appeal . . . and collaterally attack the fifteen (15) year sentence imposed by the Court. In other words, if the defendant receives a sentence of fifteen (15) years, this agreement constitutes an *unconditional and complete waiver of appeal and collateral attack, as to any and all issues related to this case.*" Plea Agreement at 7 (Docket #3, No. 01-CR-6051T) (emphasis supplied). Thus, the rights waiver effectuated in the context of Graves' plea agreement applies to challenges made on direct appeal and collateral review.

In his *pro se* petition, Graves raises the following claims for relief: (1) plea counsel was ineffective in "fail[ing] to get the 5K1.1 aspect of the agreement in writing and fail[ing] to discuss

---

[3]

| The Court: | Do you understand that you have waived your right to appeal any sentence I impose provided it's within the guideline level, within the terms of this agreement or if it's lower? In other words, if I lower your sentence, you waive your right to appeal. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | Do you understand that, Mr. Bernacki [defense counsel]? |
| Mr. Bernacki: | Yes, your Honor. |
| The Court: | Does the government understand that? |
| Mr. Puscheck: | Yes. |

Plea Transcript at 12-13.

8

the terms at defendant[']s plea elocution"; (2) appellate counsel was ineffective in failing to request "specific performance of the government[']s breach and not withdrawal of defendant[']s plea"; (3) sentencing counsel was ineffective in failing to "raise an *Apprendi* violation due to unconstitutional sentencing enhancements" and failing to raise objections to the pre-sentence report; and (4) appellate counsel was ineffective in failing to raise a "*Booker*, *Fanfan* nor [*sic*] *Blakely* violation due to unconstitutional sentence enhancements" and failing to raise objections to the pre-sentence report. *See* Petition at 5-6 (Docket #26, No. 01-CR-6051T). The Court agrees with the Government that Graves's validly executed waiver of his appellate and collaterally attack rights clearly precludes review of his third and fourth claims, which relate to the term of his sentence.

**2. Claims not barred by Graves's waiver of appellate and collateral-attack rights**

The Court observes, however, that Graves's waiver of appellate and collateral attack rights does not foreclose an attack on the validity of the process by which the waiver was procured. *Frederick*, 308 F.3d at 195-96 (citing, *inter alia*, *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (*per curiam*) (declining to enforce waiver of appellate rights where defendant sought to challenge on appeal the constitutionality of the process by which appeal rights were waived)). Thus, to the extent that Graves's claims relate to the constitutionality of the plea agreement procedure, they would not be barred by the rights waiver.

9

The Court finds that Graves's remaining claims relate to the constitutionality of the plea procedure and therefore may be reviewed collaterally, notwithstanding Graves's waiver of his appellate and collateral-attack rights. "While a guilty plea cannot ordinarily be collaterally attacked, since it is considered an admission of all of the elements of the crime, it may be challenged on collateral review if it was not knowing and voluntary." *Triestman v. United States*, 124 F.3d 361, 368 n.6 (2d Cir. 1997) (citing *United States v. Broce*, 488 U.S. 563 (1989)); *accord Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). In *Broce*, the Supreme Court explained that

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

488 U.S. at 569.

Both Vacca and Graves contend that Graves did not receive the effective assistance of counsel at any stage of the plea proceedings. The Supreme Court has held "that the two-part *Strickland v. Washington*[, 466 U.S. 668 (1984)] test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Hill*, the Supreme Court explained that "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more

than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759, 771 (1970)]." *Id.* On the other hand, the *Strickland* test's second prong (*i.e.*, the "prejudice" requirement) "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* Thus, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Vacca first argues that counsel "should have moved for specific performance of the cooperation/5K1.1 aspect of the plea agreement." He contends that the Government breached its obligations under the so-called "cooperation clause" by failing to secure Graves's release from custody so that he could provide "proactive" cooperation to the Government. Because the Government failed to secure Graves's release, Vacca contends that Graves wrongly was not given the opportunity to "substantially cooperate" with the Government. Vacca therefore seeks to hold the Government to its "promise" to make a 5K1.1 motion. Vacca and Graves also maintain that Graves was never advised at the remand hearing on September 9, 2004, that he could ask for "specific performance" of the plea agreement. In particular, Vacca contends that counsel at the remand hearing was ineffective in failing to request specific performance of the "cooperation aspect" of the plea agreement or for a 5K1.1 downward departure motion.

Both Vacca and Graves refer to the Government's so-called "cooperation promise." As the Second Circuit noted, the written plea agreement "contained *no language* . . . as to whether the Government would move, or consider moving, for a 5K1.1 departure for rendering substantial assistance." *Graves*, 374 F.3d at 81 (emphasis added). Although the Government has stated that there was a "5K aspect to the plea agreement" and explained that "[i]f the Court agrees to the fifteen years, there is the possibility that in terms of the numbers, if there's a 5K motion, [the sentence] could be less than the fifteen years," the written plea agreement contained an "integration clause, explicitly disclaiming the effectiveness of any prior oral representations." *Id.* As the Second Circuit noted, "under usual principles of contract law, oral representations cannot alter the terms of a written agreement." *Id.* at 84 (citing *United States v. Altro*, 180 F.3d 372, 375-77 (2d Cir. 1999)).

Thus, nothing in the written plea agreement executed by Graves could reasonably be viewed as holding the Government to a promise to secure Graves's release so that he could provide proactive cooperation or to make a 5K1.1 downward departure motion based on that assistance. For this reason, the Court finds that it was not professionally unreasonable for Graves's previous appellate attorneys to fail to seek "specific performance of the cooperation/5K1.1 aspect" of the *written* plea agreement as there is no basis for maintaining such a term can be found within the written agreement itself. Because the Court has not found deficient

12

performance on the part of Graves's attorneys in this regard, there is no need for the Court to consider the "prejudice" component of *Strickland*. *See* 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one").

The Court turns next to Graves's claim raised in his *pro se* petition that defense counsel erroneously failed to "get the 5K1.1 aspect of the agreement in writing" and "failed to discuss the terms" at the plea elocution. The written, signed plea agreement indicates that at the time of sentencing, the Government "will make the nature and extent of the defendant's compliance with this [cooperation] agreement known to the Court." As Graves correctly notes, the written plea agreement does not mention the possibility of a downward departure motion. In addition, Graves acknowledged during the colloquy that the Government was not under any obligation to make a downward departure motion, and that any such motion was contingent on Graves providing "substantial assistance" to the Government. Furthermore, the Court clearly informed Graves that the Government, in deciding whether a downward departure motion was warranted, had the sole discretion to evaluate his cooperation. *See* Plea Transcript at 11-12 ("Should you cooperate to the satisfaction of the government . . . .").

Given the extraordinary amount of discretion reposed in the Government with respect to filing a 5K1.1 motion for a downward departure in return for a defendant's substantial assistance, the

Court finds that it was not reasonable to expect defense counsel to be able to *compel* the prosecutor to enter into a written cooperation agreement. *See Genao v. United States*, No. 03 Civ. 5398(SAS), 2005 WL 1123886 at *4 (S.D.N.Y. May 11, 2005) ("Furthermore, a defense attorney cannot compel the Government to enter into a Cooperation Agreement or make a U.S.S.G. § 5K1.1 motion.") (citing *United States v. Brown*, 321 F.3d 347, 354 (2d Cir. 2003) ("The decision whether to file a section 5K1.1 motion for a defendant's substantial assistance lies within the discretion of the government."); *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990) (noting that the "question of substantial assistance is self-evidently a question that the prosecution is uniquely fit to resolve") (internal quotation marks and citation omitted)); *see also United States v. Khan*, 920 F.2d 1100, 1104 (2d Cir. 1990), *cert. denied*, 111 S. Ct 1606 (1991) ("Absent a specific agreement, the decision by a prosecutor to refuse to recommend a downward departure is generally not subject to judicial review. Where, as here, there is a cooperation agreement that provides for a downward departure motion incorporating the "substantial assistance" language of the statute, the prosecutor's discretion is generally the sole determinant of whether the defendant's conduct warrants making the motion. We are mindful of the deference due prosecutorial decisions in this area.") (citing Guidelines § 5K1.1, Commentary, Application Note 3 ("Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance.") (other citations omitted).

Therefore, the Court cannot find that petitioner's counsel provided deficient representation in this regard, and this ineffective assistance claim does not warrant habeas relief.

### 3. Voluntariness of petitioner's guilty plea

"While a guilty plea cannot ordinarily be collaterally attacked, since it is considered an admission of all of the elements of the crime, it may be challenged on collateral review if it was not knowing and voluntary." *Triestman v. United States*, 124 F.3d 361, 368 n.6 (2d Cir. 1997) (citing *United States v. Broce*, 488 U.S. 563 (1989)); *accord Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). In *Broce*, the Supreme Court explained that

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

488 U.S. at 569.

Here, Graves does not assert that his guilty plea was involuntarily made or that he did not receive the effective assistance of counsel in deciding to plead guilty rather than proceed to trial. Indeed, during the plea colloquy, Graves verified that he had had "ample opportunity to discuss [his] case" with his attorney and that he was "satisfied with the representation" he had received from counsel "thus far." Plea Transcript at 6. The Court confirmed that Graves understood all of the constitutional rights

15

he was waiving by entering a guilty plea. *Id.* at 8-10.  The Court explained in detail the cooperation agreement called for as part of the plea bargain and reiterated that the Government was "not obligated" to move for a downward departure based on Graves's provision of substantial assistance. *Id.* at 11-12. Graves indicated that no one had "threatened [him] or forced [him] in any way to plead guilty" and he had been made no promises beyond what had been discussed as part of the plea agreement. *Id.* at 13.

The Court is entitled to rely upon Grave's sworn statements that he understood the consequences of his plea, had discussed the plea with his attorney, understood that he was waiving his right to appeal or collaterally attack his sentence of fifteen years, and had been made no promises except those contained in the plea agreement. *Hernandez*, 242 F.3d at 112. In sum, Graves has raised no substantial question about the voluntary and knowing nature of his guilty plea or his counsel's performance in connection with the decision to plead guilty.

**4.   Request for a hearing**

Both Vacca and Graves now are requesting that the remand hearing, directed by the Second Circuit, be held at the Court's convenience. *See* Petitioner's Reply at 4; Petitioner's Response at 10. Vacca states that Graves "is requesting that this Court direct the Government to make the 5K1.1 motion" after a hearing on whether the Government's acted in bad faith. Petitioner's Response at 11. Vacca reasons that if the Government has acted in bad faith, the

16

remedy is not to vacate the plea "but to enforce the agreement, as contemplated by the parties." *Id.*

As discussed above, there is no "5K1.1 agreement" to enforce. Indeed, the Second Circuit appears to have contemplated two outcomes if it were shown, after the remand hearing, that the Government induced Graves to enter into the plea agreement based on "representations that were made and not intended to be carried out": either invalidation of the agreement or withdrawal of the plea. *Graves*, 374 F.3d at 84 (citing *United States v. Knights*, 968 F.2d 1483, 1488 (2d Cir. 1992)); *see also id.* ("Accordingly, [Graves's] case is remanded to the District Court for a hearing and findings. If, on an expanded record, the *District Court elects to permit withdrawal of the plea*, the case will proceed in the District Court. *If the District Court again denies withdrawal of the plea*, then, upon the filing of the District Court's findings, the matter will be automatically restored to our jurisdiction, and this panel will resume consideration of the appeal, in light of the more fully developed record and the District Court's findings") (emphases supplied).

However, Graves maintains that he has never wanted, and does not presently want, to withdraw his guilty plea. Therefore, there is no point in holding an evidentiary hearing where the only remedy–withdrawal or invalidation of the guilty plea–is not desired by petitioner. Accordingly, the request for an evidentiary hearing is denied.

**CONCLUSION**

For the reasons stated above, Gregory Graves's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is denied, and the petition is dismissed. Because Graves has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
Michael A. Telesca
United States District Judge

DATED:   July 26, 2006
         Rochester, New York.